**Eldridge EDWARDS, Jr., Appellant,**

v.

**Jorge A. GARCIA–GREGORY, M.D.; Kelsey–Seybold Clinic, P.A.; and Denton Cooley, M.D., Appellees.**

No. C14–92–01089–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 2, 1993.

Rehearing Denied Dec. 30, 1993.

John Gano, Houston, for appellant.

Boyd Smith, Jr. and Deborah E. Lewis, Houston, Kevin J. Keith, Dallas, for appellees.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

This is a medical malpractice case. Artie Mae Hall Edwards died after undergoing open-heart surgery. The Reverend Eldridge Edwards, Jr., individually, as representative of his wife's estate, and as next friend of her minor child sued Dr. Garcia–Gregory, the Kelsey–Seybold Clinic (the "Clinic"), and Dr. Cooley. Edwards appeals summary judgments granted in favor of defendants. We affirm.

Since the 1970's Mrs. Edwards suffered from diabetes and scleroderma. Scleroderma is an incurable vascular disease that reduces the blood supply to the body organs and prevents cuts, including surgical incisions, from healing. Severed tissues do not grow together. A small cut on Mrs. Edwards' finger took seven years to close.

In 1982 Mrs. Edwards, complaining of chest pain, saw Dr. Garcia–Gregory, a cardiologist. He discovered partial occlusion of two coronary arteries. He was aware of Mrs. Edwards' diabetes and scleroderma and elected to treat her with medication rather than surgery.

By 1986 Mrs. Edwards' coronary occlusions had worsened despite drug therapy. She continued to suffer chest pain. She now had total occlusion of two major coronary arteries and near-total occlusion of a third. This was severe coronary disease, and Mrs. Edwards was now at extremely high risk of a heart attack. While Dr. Garcia–Gregory had previously found Mrs. Edwards unsuitable for gallstone surgery, he now advised open-heart bypass surgery to correct the coronary occlusions. He did so because of the risk that she might not have lived for many more months or years without the operation.

Dr. Garcia–Gregory arranged for Dr. Cooley to do the surgery. Dr. Cooley was aware of Mrs. Edwards' diabetes and scleroderma. On October 28, 1986, Dr. Cooley performed a quadruple coronary bypass procedure on Mrs. Edwards. Shortly thereafter, he performed follow-up surgery to correct a hemorrhaging problem. But Mrs. Edwards' incisions would not heal. Infection entered through the open wounds in her chest and legs. On December 8, Dr. Cooley attempted reconstructive surgery to close the wounds. This failed, Mrs. Edwards' infection became systemic, and gangrene developed. She died on January 21, 1987.

Edwards sued Dr. Garcia–Gregory, the Clinic, and Dr. Cooley. We note that the Clinic's legal responsibility, if any, was vicarious, i.e., derived from Dr. Garcia–Gregory's liability. *See Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807 (Tex.1980). Edwards sued on theories of lack of informed consent, negligence, and gross negligence. He alleged that neither Dr. Garcia–Gregory nor Dr. Cooley explained to Mrs. Edwards the risks of surgery in light of her pre-existing scleroderma and thereby failed to obtain her informed consent. Edwards further alleged that Dr. Garcia–Gregory recommended, and Dr. Cooley performed, surgery on Mrs. Ed-

wards when she was not a suitable candidate for such surgery.

Dr. Garcia–Gregory moved for summary judgment on grounds that he had met or exceeded the applicable standard of care and had not proximately caused injury to Mrs. Edwards. He also contended that, as cardiologist, he had no duty to obtain Mrs. Edwards' informed consent for the surgical procedure. Dr. Cooley moved for summary judgment on the basis that Mrs. Edwards was a suitable surgical candidate under all of the prevailing circumstances and that no act or omission by Dr. Cooley breached the applicable standard of care or caused injury to Mrs. Edwards. He also asserted that Mrs. Edwards signed a consent form that informed her of the risk of infection and death. The trial court granted both motions for summary judgment. Edwards appeals.

## I. STANDARD OF REVIEW

■■■ The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management, Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the non-movant as true. *Id.* We indulge every reasonable inference in favor of the non-movant and resolve any doubts in his favor. *Id.* If the movant's motion and summary judgment proof facially establishes his right to judgment as a matter of law, then the burden shifts to the non-movant to raise fact issues precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A defendant, to be entitled to summary judgment, is required to disprove at least one essential element of each pleaded cause of action or otherwise show that plaintiffs could not succeed on any theory pleaded. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975).

## II. INFORMED CONSENT

### A. Dr. Garcia–Gregory (the referring physician)

In point of error one, Edwards complains that the trial court erred in granting Dr.

Garcia–Gregory and the Clinic's motion for summary judgment in that the summary judgment proof did not negate Edwards' cause of action for the failure of Dr. Garcia–Gregory to obtain Mrs. Edwards' informed consent.

Edwards argues that it was Dr. Garcia–Gregory's burden to come forward with competent summary judgment evidence that he was not negligent "in failing to disclose [to Mrs. Edwards] the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." *Price v. Hurt*, 711 S.W.2d 84, 87 (Tex.App.—Dallas 1986, no writ); Tex.Rev. Civ.Stat.Ann. art. 4590i, § 6.02 (Vernon Supp.1993). Edwards contends that the risk to Mrs. Edwards that her surgical wounds would not heal due to her scleroderma was a risk or hazard that could have influenced a reasonable person in making the decision to have the surgery. He maintains that Dr. Garcia–Gregory's only summary judgment proof, an affidavit by a Dr. Kleiman, was silent on the issue of the information provided to Mrs. Edwards and her informed consent.

■■ We need not reach the issue of the sufficiency of Dr. Kleiman's affidavit regarding the information that Dr. Garcia–Gregory provided Mrs. Edwards. We find that Dr. Garcia–Gregory, as a referring physician who did not participate in the surgery, had no duty to inform Mrs. Edwards of the possible risks and complications involved in the operation. *Johnson v. Whitehurst*, 652 S.W.2d 441, 445 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■■ "A cause of action for the failure of a doctor to fully inform a patient of the risks of surgery is a negligence cause of action." *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex.1989). A physician has a duty to disclose "the risks and hazards involved in the medical care or surgical procedure *rendered by the physician* ...." *Ritter v. Delaney*, 790 S.W.2d 29, 31 (Tex.App.—San Antonio 1990, writ denied), quoting art. 4590i, § 6.02 (emphasis added in *Ritter*). A referring

physician has no duty to obtain informed consent regarding a procedure to be performed by *another* physician. As is true of negligence generally, when no duty exists, no legal liability arises. *Ritter, supra* at 30. We find as a matter of law that Dr. Garcia-Gregory had no duty to obtain Mrs. Edwards' informed consent to the surgery performed by Dr. Cooley. We overrule point one.

### B. Dr. Cooley (the surgeon)

In point of error two, Edwards complains that the trial court erred in granting Dr. Cooley's motion for summary judgment because Dr. Cooley's summary judgment proof did not negate Edwards' cause of action for the failure of Dr. Cooley to obtain Mrs. Edwards' informed consent.

Edwards argues that Dr. Cooley's only summary judgment proof, Dr. Cooley's own affidavit, was conclusory and did not specify what risks were disclosed to Mrs. Edwards. He asserts that only one sentence in the affidavit related to informed consent: "Informed consent was obtained for this surgery, after the risks were explained in detail to Mrs. Edwards." Edwards maintains that the affidavit shed no light on whether Dr. Cooley informed Mrs. Edwards of "the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." *Price, supra;* art. 4590i, § 6.02. Edwards also argues that Edwards' own affidavit, denying that Dr. Garcia-Gregory or Dr. Cooley obtained the informed consent of Mrs. Edwards, directly refutes Dr. Cooley's affidavit and raises a fact issue.

Medical malpractice is an area of the law where the fact finder must be guided by medical expert testimony. *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965). The testimony of an interested expert witness, a defendant in a malpractice suit, can be proper summary judgment evidence. *Milkie v. Metni,* 658 S.W.2d 678, 680 (Tex.App.—Dallas 1983, no writ); Tex.R.Civ.P. 166a(c).

In pertinent part, Dr. Cooley's affidavit stated:

... It was known prior to surgery that the patient suffered from scleroderma, which is a severe systemic disease of a fatal nature. Complicating this disease were diabetes, arteriosclerosis, hypertension, and coronary occlusive disease. Surgical treatment was directed at the coronary disease which seemed to threaten her life most urgently.

Informed consent was obtained for this surgery, after the risks were explained in detail to Mrs. Edwards.

\* \* \* \* \* \*

[I]t is my expert opinion, based upon a reasonable degree of medical probability, that no act or omission on my part caused or contributed to any damages or injuries to Mrs. Edwards.

In his affidavit, Dr. Cooley averred that he informed Mrs. Edwards in detail of the risks associated with her surgery. From the context, it is clear that the risks were those associated with Mrs. Edwards' scleroderma, diabetes, arteriosclerosis, hypertension, and coronary occlusive disease. Dr. Cooley stated that he obtained Mrs. Edwards' consent to the surgery. The summary judgment proof included the consent form signed by Mrs. Edwards wherein she acknowledged the risk of "infection ... and even death." Edwards' personal, non-expert affidavit was insufficient to refute Dr. Cooley's expert evidence and raise a fact issue. We note that Edwards stated in his appellate brief that Mrs. Edwards had experienced a cut that took seven years to heal, indicating that Mrs. Edwards was aware of her body's difficulty in healing itself.

Moreover, proximate cause is an element of an informed consent cause of action. *McKinley, supra.* Dr. Cooley asserted that no act or omission on his part caused injury to Mrs. Edwards. Edwards did not respond with any expert medical evidence to counter Dr. Cooley's negation of the causation element.

We find that Dr. Cooley's testimony was "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R.Civ.P. 166a(c). Dr. Cooley's

summary judgment proof was sufficient as a matter of law to negate Edwards' lack of informed consent claim. We overrule point two.

## III. NEGLIGENCE

### A. Dr. Garcia–Gregory (the referring physician)

In points three and five, Edwards contends that the trial court erred in granting Dr. Garcia–Gregory and the Clinic's motion for summary judgment because their only summary judgment proof, an affidavit by a Dr. Kleiman, was insufficient to support summary judgment and because the evidence showed that fact issues remained on negligence and gross negligence.

Edwards pled that Dr. Garcia–Gregory was negligent in prescribing surgery for an unsuitable candidate. Edwards argues that Mrs. Edwards' scleroderma was a risk of such magnitude as to render the surgical option infeasible. Edwards offered no expert medical evidence of his own, and so relies on the insufficiency of Dr. Garcia–Gregory's only summary judgment proof (an affidavit by a Dr. Kleiman), and on the depositions of Drs. Garcia–Gregory and Cooley.

In pertinent part, Dr. Kleiman's affidavit states:

> The amount and degree of occlusion placed [Ms. Edwards] at extremely high risk of ... heart attack. Ms. Edwards additionally continued to have chest pain despite drug therapy. Based on these findings, the standard of care required surgical intervention instead of drug and medical therapy alone. A coronary artery bypass graft was indicated for Ms. Edwards and was recommended by Dr. Garcia–Gregory. This recommendation fully complied with the standard of care based on Ms. Edwards' condition.
>
> * * * * * *
>
> I am familiar with the standard of care required of a reasonably prudent physician in examining, diagnosing, and treating patients with symptoms similar to those presented by Ms. Edwards. The medical care and treatment rendered to Ms. Edwards

by Dr. Garcia–Gregory met or exceeded the applicable standard of care as described above. Specifically, Dr. Garcia–Gregory performed several cardiac catheterizations to evaluate the extent and progression of Ms. Edwards' coronary artery disease and chest pain. He appropriately managed her medically with medication and reevaluation for as long as possible without the need for surgical intervention. When Ms. Edwards' occlusive coronary artery disease progressed to a severe and life threatening condition, Dr. Garcia–Gregory appropriately referred her to a cardiovascular surgeon, Dr. Denton Cooley, for bypass surgery. It is my expert opinion that the diagnosis, care, and treatment that Dr. Garcia–Gregory provided to Ms. Edwards complied with or exceeded the applicable standard of care for a physician treating a patient like Ms. Edwards under similar circumstances. Furthermore, it is my opinion that nothing Dr. Garcia–Gregory did or failed to do caused any injury to Ms. Edwards.

Edwards attacks Dr. Kleiman's affidavit as conclusory. He asserts that the affidavit contains no statement of the appropriate standard of care for determining the suitability of a patient with severe systemic scleroderma as a candidate for coronary bypass surgery.

 A medical expert's affidavit is sufficient when the affiant (1) states that he is familiar with the standard of care, (2) states with specificity each examination and treatment performed, (3) states that the acts of the physician were consistent with the appropriate standard of care, and (4) states that there was no casual connection between the physician's acts and the plaintiff's injury. *See Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 216–17 (Tex.App.—Houston [1st Dist.] 1986, no writ); *see also Tilotta v. Goodall*, 752 S.W.2d 160, 164 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

Kleiman averred that he was familiar with the standard of care "required of a reasonably prudent physician in examining, diagnosing, and treating patients with symptoms similar to those presented by Ms. Edwards." He stated with adequate specificity what

treatment Dr. Garcia–Gregory rendered Mrs. Edwards including an appropriate referral to a cardiovascular surgeon "[w]hen Ms. Edwards' occlusive coronary artery disease progressed to a severe and life threatening condition. . . ." Kleiman testified that, in his expert opinion, "the diagnosis, care, and treatment that Dr. Garcia–Gregory provided to Ms. Edwards complied with or exceeded the applicable standard of care for a physician treating a patient like Ms. Edwards under similar circumstances." Finally, Kleiman averred that "it is my opinion that nothing Dr. Garcia–Gregory did or failed to do caused any injury to Ms. Edwards."

Dr. Kleiman's affidavit is clear, positive and direct, otherwise credible and free from contradiction and could have been readily controverted. TEX.R.CIV.P. 166a(c). We find that the affidavit was sufficient summary judgment proof on the issue of the suitability of Mrs. Edwards for surgery to shift the burden of proof to Edwards to offer expert medical evidence of his own to raise a fact issue. *See Wheeler, supra and Tilotta, supra.* However, Edwards did not respond with any expert medical evidence.

Edwards contends, however, that deposition testimony by Drs. Garcia–Gregory and Cooley raises fact issues precluding summary judgment. The depositions indicate that Dr. Garcia–Gregory knew of Mrs. Edwards' scleroderma but advised surgery anyway. Dr. Garcia–Gregory admitted that it was his responsibility to determine whether or not a patient was a suitable candidate for surgery. The doctor also admitted that he knew that the scleroderma could prevent the healing of any surgical incision. Dr. Cooley testified that the decision to perform surgery on Mrs. Edwards was made primarily by Dr. Garcia–Gregory.

Even assuming that the depositions were competent medical expert evidence, the testimony did not address the issue of the standard of care for selection of a suitable surgical candidate and whether the decision to operate on Mrs. Edwards met that standard. The Kleiman affidavit is the only competent summary judgment evidence on that issue, and that evidence supports judgment for Dr. Garcia–Gregory as a matter of law.

A defendant need only negate one essential element of a plaintiff's cause of action to be entitled to summary judgment. *Rosas, supra.* Dr. Garcia–Gregory successfully negated both negligence and causation elements of Edwards' cause. Dr. Garcia–Gregory was entitled to summary judgment on the issues of negligence and gross negligence, and we overrule points three and five.

## B. Dr. Cooley

In points four and six, Edwards contends that the trial court erred in granting Dr. Cooley's motion for summary judgment because Dr. Cooley's affidavit was insufficient to support the motion and because the evidence shows that fact issues remain on the issues of negligence and gross negligence.

Edwards complains that Dr. Cooley knew of the unreasonable risk of scleroderma but performed surgery on Mrs. Edwards anyway. As was true regarding Edwards' response to Dr. Garcia–Gregory's motion for summary judgment, Edwards offered no expert medical evidence of his own in response to Dr. Cooley's motion. Edwards relies on the insufficiency of Dr. Cooley's affidavit and on the depositions of Drs. Garcia–Gregory and Cooley.

Dr. Cooley's affidavit, his only summary judgment proof, states in pertinent part:

It was known prior to surgery that the patient suffered from scleroderma, which is a severe systemic disease of a fatal nature. Complicating this disease were diabetes, arteriosclerosis, hypertension, and coronary occlusive disease. Surgical treatment was directed at the coronary disease which seemed to threaten her life most urgently.

\* \* \* \* \* \*

It is . . . my expert opinion, based upon a reasonable degree of medical probability, that while Mrs. Edwards was a high risk patient, due to her underlying diseases, surgery was appropriate because of the severe nature of her coronary disease which seemed to threaten her life most urgently.

Further, it is my expert opinion, based upon a reasonable degree of medical probability, that no act or omission on my part caused or contributed to any damages or injuries to Mrs. Edwards.

Edwards complains that Dr. Cooley's affidavit was inadequate because it did not describe the applicable standard of care for determining whether a patient was a suitable surgical candidate.

 In so many words, Dr. Cooley established that, in his expert opinion, the appropriate treatment for a patient with multiple medical problems was to deal with the most urgent threat to the patients' life. He also established that surgery was recommended for Mrs. Edwards because her occlusive heart disease threatened her life most urgently. Dr. Cooley also averred that he did not cause any injury to Mrs. Edwards.

If otherwise competent, the affidavit of a defendant physician can be sufficient to negate as a matter of law one or more elements of a plaintiff's malpractice cause of action. *See Milkie, supra.* Dr. Cooley's affidavit is clear, positive and direct, otherwise credible and free from contradiction and could have been readily controverted. TEX.R.CIV.P. 166a(c). We find Dr. Cooley's affidavit competent summary judgment proof. *See Wheeler, supra and Tilotta, supra.*

Dr. Cooley's affidavit was sufficient to shift the burden to Edwards to come forward with expert medical evidence of his own to raise a fact issue. This Edwards failed to do. We therefore find that Dr. Cooley was entitled to summary judgment on the issue of the suitability of Mrs. Edwards for open heart surgery. We overrule points four and six.

## IV. CONCLUSION

Finding no error, we affirm the judgment below.

J. CURTISS BROWN, C.J., not participating.