Gail H. RALLINGS and April Harrison
Fisher, Appellants,

v.

Randolph W. EVANS, M.D., Appellee.

No. 14–94–01211–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 5, 1996.

John Gano, Houston, for appellants.

James R. Boston, Lee D. Thibodeaux, Glenn W. Cunningham, Thomas F. Bickham, Jr., for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

In this medical malpractice case, Gail H. Rallings and April Harrison Fisher appeal a take-nothing summary judgment entered in favor of Randolph W. Evans, M.D., on the grounds that Evans failed to meet his burden of proof and genuine issues of material fact existed. We affirm.

From April 23 to June 14, 1991, appellants' father, Clyde Harrison, saw Evans, a board certified neurologist, and complained of dizziness, ringing in both ears, drowsiness while sitting or reading, and increased stress from his job. After conducting several examinations and tests, Evans was not able to make a diagnosis. After Harrison died, appellants filed suit against Evans for failing to diagnose that Harrison suffered from a brain tumor and treat him for it.

Appellants designated no expert witnesses by the deadline for doing so in the trial court's scheduling order. Six weeks later, Evans filed a motion for summary judgment on the grounds that he was not negligent in caring for Harrison and that no act or omission on his part caused Harrison's injury. In support of his motion, Evans' affidavit stated in part:

> I am a physician duly licensed to practice medicine in the State of Texas, having been licensed since 1978. I am board certified in the practice of Neurology by the American Board of Psychiatry and Neurology. I am presently on staff at Park Plaza Hospital, Methodist Hospital and St. Luke's Hospital. I obtained my undergraduate degree from Rice University and my medical degree from the Baylor College of Medicine. Upon completion of a rotating internship and a residency in Neurology, I began a private practice in medicine, specializing in Neurology. I have been in the practice of Neurology in Houston, Texas since 1982. I am a member of the Harris County Medical Society, American Academy of Neurology and American Association for the Study of Headache. I am a member of the Critical Faculty of Baylor College of Medicine and the University of Texas Health Science Center, Houston. I have also published numerous books and articles concerning Neurological issues.

> On April 23, 1991, Clyde Harrison was examined and treated as a patient in my office having been referred by his internist, Dr. John Stanford. At the time, Mr. Harrison was complaining of dizzy spells, ringing in both ears, feeling drowsy while sitting or reading, as well as increased stress from his job. I performed a complete neurological and pertinent general physical examination. No definitive diagnosis could be made after the neurological and physical examination. However, I made recommendations to Mr. Harrison that an MRI of the brain be conducted. I also recommended blood work be performed and that he be examined by an ear, nose and throat doctor. Mr. Harrison declined the recommendation of the MRI of the brain, however, he was seen by an ENT, Dr. Larry Conrad. I was informed that Dr. Conrad's exam was normal, but Dr. Conrad recommended an ENG which Mr. Harrison declined. Blood work was obtained which was normal except for a triglyceride level of 310. I spoke with Mr. Harrison on April 29, 1991, and my office, [sic] again, recommended an MRI of the brain be performed. On May 6, 1991, an MRI of the brain was performed at Greenpark Radiology Imaging Center. The MRI was interpreted by L. Paul Gerson, M.D., a neuroradiologist who also practices at St. Lukes Episcopal Hospital, who found that the MRI demonstrated an old ischem-

ic injury to the left frontal temporal region which was indicative of an old stroke. Thereafter, I recommended that a carotid ultrasound be performed. A carotid ultrasound was performed at Southwest Memorial and was determined to be normal. Mr. Harrison was next examined by me on May 31, 1991 with complaints of sleepiness. He continued to have trouble controlling his handwriting as well as memory problems, but no further complaints of dizzy spells or headaches were made. I noted mild cogwheeling of the right upper extremity. No definitive diagnosis was available based upon the examination, however, Mr. Harrison was recommended to have neuropsychological testing for complaints of nervous problems. Dr. Francisco Perez was contacted and neuropsychological testing was scheduled for June 5, 1991. Upon completion of testing and examination, Dr. Perez was of the opinion that there was significant stress and psychological factors playing a role in Mr. Harrison's symptomology. Despite the findings of the MRI and the neuropsychological testing, I was not convinced that a reasonable explanation had been found concerning Mr. Harrison's symptoms. He was again examined by me on June 14, 1991. Mr. Harrison complained of sleeping excessively. The family and I were equally frustrated at the inability to determine the cause [sic] Mr. Harrison's neurological symptoms. At that point, I told Mr. Harrison and his family that further testing could be performed or, if they chose, a second opinion by another neurologist could be arranged. On June 21, 1991, I received a message from Dr. Doody, a neurologist, for copies of Mr. Harrison's medical records, MRI, and blood test. The records were expeditiously sent to Dr. Doody. Mr. Harrison was not treated or examined by me after that date.

I am familiar with the standard of care for treatment of a patient in the same or similar condition as Clyde Harrison from April 23, 1991 through June 14, 1991. That standard is met or exceeded when the care I have outlined above as [sic] undertaken. Plaintiffs alleges [sic] that I was negligent in failing to make a diagnosis of the condition of Mr. Harrison and never examining the actual MRI film.

I expressly deny each and every one of Plaintiff's allegations. I am not a neuroradiologist and do not have any formal training in reading MRI studies. Therefore, I properly referred Mr. Harrison to well known and experienced neuroradiologists at Greenpark Radiology Imaging Center for the study and to have the study interpreted. Further, no treatment was rendered to Mr. Harrison because no definitive diagnosis was made as to the cause of his condition. The appropriate diagnostic studies and consultations were requested and performed. I am of the opinion that I was not negligent and that I complied with the relevant standard of care during my treatment of Clyde Harrison. Based upon a reasonable degree of medical probability, no act or omission on my part caused any damage or injury to Mr. Harrison.

In their summary judgment response, appellants asserted that Evans had a duty to accurately diagnose Harrison's condition and correctly treat the condition diagnosed, but failed to do so. Appellants further claimed that Harrison's brain tumor was apparent from the MRI Evans had performed by Greenpark Radiology Imaging Center ("Greenpark"), but that without reviewing the MRI films himself, Evans reported to Harrison that the MRI showed no abnormality. Appellants' response was supported by deposition testimony of Evans and Fisher, but no other expert witness. The trial court granted the motion for summary judgment without stating the basis therefor.

In nine points of error appellants argue that the judgment of the trial court should be reversed because Evans' affidavit was defective for being conclusory, Evans failed to meet his burden of proof, and fact issues remained.

## Standard of Review

A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). A defendant moving

for summary judgment has the burden to establish by competent summary judgment proof, as a matter of law, that there is no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 474 (Tex.1995).

A summary judgment may be based on uncontroverted testimony of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c). If an interested expert witness presents legally sufficient evidence to support a motion for summary judgment, the nonmovant must produce expert testimony to controvert it. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991). However, conclusory statements by an expert witness are insufficient to support summary judgment. *Id.*

Evidence that may be considered in granting summary judgment includes that which is set forth in both the motion and response. Tex. R. Civ. P. 166a(c); *Wilson v. Burford,* 904 S.W.2d 628, 628 (Tex.1995). Thus, deposition testimony referred to in a summary judgment response is proper summary judgment evidence on which both the movant and respondent may rely. *Wilson,* 904 S.W.2d at 629.

In reviewing a summary judgment, evidence favorable to the nonmovant is taken as true, and all doubts regarding the evidence are resolved in favor of the nonmovant. *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex.1996). When a summary judgment does not specify the grounds upon which it was granted, it will be affirmed if any ground asserted in the motion has merit. *Star–Telegram,* 915 S.W.2d at 473.

### Sufficiency of Evidence

In this case, Evans' summary judgment motion and affidavit sought to establish, among other things, that he did not breach the applicable standard of care. Appellants contend that Evans' affidavit was insufficient to establish this because it merely stated that he knew the applicable standard of care and that it was met. Appellants also assert that fact issues on Evans' compliance with the standard of care were raised by the deposition testimony they cited in their summary judgment response.

In a medical malpractice case, the plaintiff is required to show evidence of a reasonable medical probability or reasonable probability that his injury was proximately caused by the negligence of the defendant. *Park Place Hosp. v. Estate of Milo,* 909 S.W.2d 508, 511 (Tex.1995). The general negligence standard of care for a physician is to undertake a mode or form of treatment which a reasonable and prudent member of the medical profession would undertake under the same or similar circumstances. *Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex. 1977). Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony is required to meet a plaintiff's burden of proof in a medical malpractice case. *Id.* at 165–66. Because the standard of care demanded in medical malpractice cases requires skills not ordinarily possessed by lay persons, those cases typically require expert testimony to establish the medical standard of care. *St. John v. Pope,* 901 S.W.2d 420, 423 (Tex.1995) (citing *Hood,* 554 S.W.2d at 165–66).

The evidence required to negate a breach of the standard of care in a medical malpractice case has not been articulated by the Texas Supreme Court, and has varied among, and even within, the courts of appeals of the State. An opinion of this court has stated, for example, that a medical expert's affidavit is sufficient when it states (1) that the expert is familiar with the standard of care, (2) each examination and treatment performed by the defendant, (3) that the acts of the defendant were consistent with the appropriate standard of care, and (4) that there was no causal connection between the defendant's acts and the plaintiff's injuries. *See Edwards v. Garcia–Gregory,* 866 S.W.2d 780, 785 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Other opinions have re-

quired that the evidence not only state that the expert knows the standard of care and concludes that it was met, but must also state what the standard is and what was done to meet it.[1] Some of these decisions have further required an explanation of how the exercise of reasonable care could have led to the undesired result.[2]

■ In this case, apart from the affidavit offered by Evans, appellants referred in their summary judgment response to the following incomplete excerpts[3] from Evans' deposition:

Q: Making the diagnosis of a condition such as Mr. Harrison's is part of your specialized job. Right?

A: That is correct.

Q: And more than that, its part of your duty as a doctor to Mr. Harrison as your patient?

A: My duty is to make a diagnosis, the best that I can, within my ability, within my training, and within community standards.

Q: Well, as between you and your patient, Mr. Harrison, you had certain duties and responsibilities to him, did you not?

A: Of course. That's what the doctor/patient relationship is all about.

Q: And one of those duties and responsibilities to Mr. Harrison included the responsibility to diagnose whatever his condition was?

A: Well, the responsibility is to diagnose the best you can, based upon reasonable medical probability and reasonable medical standards ... that you can. So my obligation to Mr. Harri-

son was to give him the best diagnosis that I could.

Q: So what do you deem your responsibility to Mr. Harrison to be?

A: My responsibility to Mr. Harrison.... My obligation is to provide the best neurological services that I can provide that are humanly possible, to be available to Mr. Harrison, to try to use my training and background to help him. That's my obligation.

Therefore, even if Evans' affidavit failed to do so, these deposition excerpts provided expert testimony of a standard of care, namely, to make a diagnosis to the best of a doctor's ability and training, and within community standards. In addition, Evans' affidavit detailed the steps he followed in attempting to diagnose Harrison's condition, and stated an opinion that the standard of care for treatment of a patient in the same or similar condition as Harrison was met by the procedures he followed. Thus, read together, Evans' affidavit and the deposition testimony referred to in appellants' summary judgment response stated an expert opinion of what his standard of care was and what he did to meet it, and was specific enough to be readily controverted.

Although the evidence did not also explain *why* a physician using reasonable care would have failed to diagnose the brain tumor, we believe that such an explanation goes to the *weight* of the evidence rather than its sufficiency, and is not required in order to meet a defendant's summary judgment burden of proof. Therefore, we overrule appellants' challenge to the legal sufficiency of the sum-

---

1. See *Hall v. Tomball Nursing Ctr., Inc.*, 926 S.W.2d 617 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.); *Schexnider v. Scott & White Memorial Hosp.*, 906 S.W.2d 659, 661 (Tex.App.—Austin 1995, writ requested); *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex.App.—El Paso 1995, writ denied); *Armbruster v. Memorial Southwest Hosp.*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ).

2. See *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex.App.—El Paso 1995, writ denied) (holding evidence insufficient because it gave no explanation as to why a reasonably prudent radiologist would have interpreted mammogram negatively for cancer in light of malignancy discovered a

year later); *Armbruster v. Memorial Southwest Hosp.*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ) (holding evidence insufficient because it gave no explanation why a physician using reasonable care would have failed to diagnose the broken foot and cast the fracture).

3. Some of these deposition excerpts do not contain Evans' complete responses to the questions asked, but only the portions quoted in appellants' summary judgment response and, thus, the portions that were before the trial court in connection with the summary judgment.

mary judgment evidence to negate a breach of Evans' standard of care.

## Fact Issues

■ Because the mode or form of treatment in this case was not a matter of common knowledge or within the experience of laymen, expert testimony was required to controvert the applicable standard of care or that Evans' actions complied with it. *See St. John*, 901 S.W.2d at 423. Because appellants provided testimony of no other expert, the only evidence that could have created a fact issue regarding the standard of care or Evans' compliance with it was Evans' affidavit and deposition testimony cited by appellants.

As to what the standard of care was, appellants cited nothing in Evans' affidavit which is inconsistent with the standard set forth in the deposition testimony quoted above. Similarly, although the remaining deposition excerpts quoted in appellants' summary judgment response are too numerous to reproduce in this opinion, they contain no testimony to the effect that Evans had an absolute duty to diagnose and treat Harrison correctly, or that his standard of care was other than as quoted above.[4]

With regard to Evans' compliance with the standard of care, the incomplete excerpts quoted from his deposition in appellants' summary judgment response indicated, among other things, the following facts favorable to the appellants: (1) that Evans never made a diagnosis of Harrison's condition, (2) that he never recommended treatment for that condition, (3) that at the time he ordered the MRI, he did not suspect a brain tumor because they are so rare, (4) that while attempting to diagnose Harrison's condition, he even ruled out a brain tumor, (5) that at the time he was treating Harrison, Evans was "upset" that he had not come to some diagnosis, (6) that he never saw the MRI films while consulting with Harrison, (7) that he first saw the films on the day before his deposition, (8) that he could see at that time that clearly there was something wrong, and (9) that he acknowledged at that time that what Harrison actually had was a brain tumor. However, these facts are not contrary to those stated in Evans' affidavit and, thus, do not controvert factually what Evans stated to have occurred. Moreover, to whatever extent these facts or others might support a conclusion that Evans' actions fell below the applicable standard of care, such an opinion could only have been properly supplied by expert medical evidence. Again, however, no such expert opinion was provided by appellants and nothing found in the excerpts of Evans' deposition which they cited can be read to state an opinion that he failed to comply with the applicable standard of care. Without such expert opinion evidence, no fact issue was raised on Evans' compliance with the applicable standard of medical care.

Therefore, because the summary judgment evidence was legally sufficient to establish Evans' standard of care and his compliance with it, and raised no fact issue thereon, Evans adequately negated one element of appellants' claim for medical malpractice and was properly granted summary judgment. Concluding that the summary judgment can be affirmed on this basis, we need not consider appellants' other challenges to it. Accordingly, the judgment of the trial court is affirmed.

---

**4.** This is not to say that Evans' statement of his standard of care was necessarily correct, but only that appellants failed to present expert summary judgment evidence to refute it.