No. 04-00-00834-CV



Richard CORREA, Individually and as Permanent Guardian for Manuel Correa,

An Incompetent Adult; Belinda C. Aguilera, Shirley Leija, and Mary Ann Correa,
Appellants



v.



Francisco A. GALLEGOS, M.D.,

Appellee



From the 73rd Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CI-15891


Honorable Martha Tanner, Judge Presiding



Opinion by: Paul W. Green, Justice


Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: April 3, 2002


AFFIRMED


 Appellants Richard Correa, Individually and as Permanent Guardian for Manuel
Correa, Belinda C. Aguilera, Shirley Leija, and Mary Ann Correa (the Correas) sued Dr.
Francisco Gallegos for medical malpractice arising from his treatment of Manuel Correa.
The trial court overruled the Correas' objections to Dr. Gallegos's affidavit testimony and
rendered summary judgment in favor of Dr. Gallegos. The Correas contend summary
judgment was improper because: (1) their medical expert's affidavit established genuine
issues of material fact; (2) the summary judgment failed to address new allegations in the
amended original petition; and (3) Dr. Gallegos's affidavit was not competent summary
judgment proof. We affirm the trial court's judgment.

Background

 Manuel Correa lived in a permanent vegetative state. On November 27, 1997, he was
admitted to Baptist Memorial Hospital, suffering from multiple severe medical problems. (1)
Almost two weeks later, Dr. Lira, Manuel's attending physician, asked Dr. Gallegos, a plastic
surgeon, to consult regarding Manuel's body ulcers. Over the course of the next several
weeks, Dr. Gallegos performed four surgeries to clean and graft the ulcerated areas and
supervised Manuel's recovery from surgery, including dressing changes and wound care.
Because of Manuel's medical condition, including his vegetative state and severe
contractures, Dr. Gallegos concluded that further surgery on the ulcers would not be helpful.

 On February 2, 1998, Manuel was released from the hospital to his former nursing
home, with detailed instructions for continuing care of his wounds. Two days later, Manuel
was transferred to University Hospital, where he remained for approximately ten days. He
was then transferred to the Veteran's Hospital for two months and then to Camlu Care
Center. Manuel's right heel ulcer never healed properly, developing gangrene that led to
amputation of Manuel's right lower leg in August 1998.

 The Correas contend Dr. Gallegos was negligent in his treatment of Manuel, causing
serious injury to Manuel, more specifically the amputation of Manuel's leg. (2) Gallegos filed
a motion for summary judgment on all claims, attaching his own affidavit as support. The
Correas responded with an affidavit from Dr. Lige B. Rushing, Jr., a specialist in internal
medicine, rheumatology, and geriatrics. The Correas complain Dr. Gallegos's affidavit is
conclusory, is not competent summary judgment evidence, and fails to address all the
contentions in the amended petition. They also claim Dr. Rushing's affidavit raises issues
of material fact as to Dr. Gallegos's lack of care and the cause of Manuel's amputation. (3) Dr.
Gallegos asserts Dr. Rushing is not qualified to testify to the standard of care for a consulting
plastic surgeon. 

Standard and Scope of Review

 We review a summary judgment de novo. To prevail on summary judgment, the
movant must show there are no genuine issues of material fact and the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Management,
Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Under Tex. R. Civ. P. 166a, once the movant has
established a right to summary judgment, the burden shifts to the non-movant to present
issues which preclude summary judgment. City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979); Garcia v. John Hancock Variable Life Ins. Co., 859 S.W.2d
427, 430 (Tex. App.--San Antonio 1993, writ denied). We review the evidence in the light
most favorable to the nonmovant, disregarding all contrary evidence and inferences. Weiss
v. Mech. Assoc. Servs., Inc., 989 S.W.2d 120, 124 (Tex. App.-San Antonio 1999, pet.
denied). When a defendant moves for summary judgment, it must negate at least one
element of the plaintiff's cause of action or conclusively establish an affirmative defense.
Zale Corp. v. Rosenbaum, 520 S.W.2d 889, 891 (Tex. 1975).

 In a medical malpractice action, the plaintiff must establish "(1) a duty of the
physician to act according to a certain standard of care; (2) breach of the applicable standard
of care; (3) injury; and (4) causal connection between the breach of care and the harm."
Lopez v. Carrillo, 940 S.W.2d 232, 234 (Tex. App.-San Antonio 1997, writ denied). To
support or overcome a motion for summary judgment in a medical malpractice action, expert
medical testimony is required on the issues of medical negligence and causation. Id.
Competent summary judgment evidence may include the affidavit of an interested witness,
if the testimony is "clear, positive and direct, otherwise credible and free from contradictions
and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c);
Edwards v. Garcia -Gregory, 866 S.W.2d 780, 784 (Tex. App.-Houston [14th Dist.] 1993,
writ denied). Affidavits that state merely conclusions rather than facts are insufficient.
Mercer v. Daoran Corp., 676 S.W.2d 580, 583 (Tex. 1984). Because the threshold question
in a medical malpractice case is the standard of care, the expert must state what the standard
is and say what was done that met or failed to meet that standard. See Armbruster v. Mem'l
Southwest Hosp., 857 S.W.2d 938, 941 (Houston [1st Dist.] 1993, no writ). 

Discussion

Dr. Gallegos's Affidavit

 Dr. Gallegos testified he was hired as a consulting plastic surgeon to recommend
treatment for Manuel's body ulcers twelve days after Manuel was admitted to the hospital.
At that time, Manuel was already suffering from numerous ulcers on his left and right hips,
left gluteal/sacral area, left elbow, and left and right heels. Dr. Gallegos further stated that
as a consulting physician, the standard of care for treating Manuel was to examine the
patient, order diagnostic tests as needed, review the results, and recommend a course of
treatment. Dr. Gallegos then outlined in detail his findings and his treatment of Manuel,
including the surgeries and follow-up recovery care and instructions.

 Dr. Gallegos testified that as a consulting physician, it was not his primary
responsibility to determine when Manuel should be discharged. However, he noted Manuel
had improved and would continue to receive treatment for his ulcers when returned to the
nursing home. Dr. Gallegos also detailed the discharge instructions he gave to the nursing
home regarding Manuel's follow-up care. He concluded that Manuel's subsequent injuries
were the result of complications from Manuel's preexisting medical conditions, not from any
failure in his treatment. 

 Although there are some conclusory statements in his affidavit, Dr. Gallegos provides
a detailed account of his treatment and follow-up care. He states that he is familiar with the
standard of care for the treatment of decubitus ulcers in a patient like Manuel and that his
care met that standard. The testimony as a whole meets the requirements of Rule 166a and
is sufficient to overcome the negligence and causation elements of appellants' complaint.
The trial court did not err in overruling objections to Dr. Gallegos's affidavit.

 We also conclude that Dr. Gallegos's affidavit adequately addressed all the issues in
the Correas' amended petition filed after the motion for summary judgment. Although the
amended petition consolidated some issues and expressed them somewhat differently, the
alleged negligence remained the same: failure to prevent and/or properly treat Manuel's
ulcers; negligence in discharging Manuel too early and/or to a facility that was not prepared
for the treatment he needed; and failure to obtain additional wound care consultations. Dr.
Gallegos's affidavit addresses and refutes each of those concerns. We overrule the Correas'
second and third issues.

Dr. Rushing's Affidavit

 Because Dr. Gallegos's affidavit is sufficient to entitle him to summary judgment, we
turn to the Correas' expert, Dr. Rushing, to see if his testimony raises a material question of
fact on each element of the malpractice claim. For this review, we assume, without deciding,
that Dr. Rushing is qualified to testify to the standard of care of a consulting plastic surgeon
even though he does not practice in that area of medicine.

 First, we note what Dr. Rushing does not say. He does not criticize the surgeries or
the other cleaning procedures that were performed on the ulcers. He does not criticize the
wound care that Manuel received at the hospital under Dr. Gallegos's supervision. His
criticism of the lack of preventive treatment, i.e., lack of pressure-relieving devices and
failure to turn the patient, is irrelevant as to Dr. Gallegos because the ulcers had already
formed before Dr. Gallegos ever saw Manuel. There is no evidence in the record that
additional ulcers developed during Manuel's hospital stay while Dr. Gallegos was treating
the preexisting condition. Therefore, Dr. Rushing's affidavit does not raise an issue of fact
with regard to Dr. Gallegos's failure to prevent or treat Manuel's ulcers.

 Dr. Rushing makes conclusory statements that Manuel was released too early to a
facility that could not properly care for him. Dr. Gallegos testified to facts indicating
Manuel's release from the hospital was appropriate. However, Dr. Rushing does not state
any facts from which a jury could conclude there was a medical reason for not releasing
Manuel, other than the fact that Manuel returned to the hospital two days later. This is no
more than speculation that because Manuel returned, he must not have been ready to leave.
Dr. Rushing states the nursing home was not able to care for Manuel in his post-operative
condition. We cannot tell if this is an assumption he made because Manuel was readmitted
to the hospital, or if, in fact, the nursing home was not equipped to handle the type of care
Manuel needed. Even assuming the latter, Dr. Rushing does not explain how the 48 hours
Manuel spent at the nursing home following his release contributed to cause further injury
or ultimately led to the amputation of his leg six months later.

 Finally, Dr. Rushing states that Dr. Gallegos was negligent in failing to obtain
additional wound care consultations but does not explain what this allegation means. Dr.
Rushing does not explain what Dr. Gallegos should have done or how the failure to act
caused Manuel's condition to worsen. Accordingly, Dr. Rushing's affidavit raises no issue
of fact as to additional wound consultations. We overrule the Correas' first issue. 

Conclusion

 We hold Dr. Gallegos's affidavit is competent summary judgment evidence, entitling
him to judgment on all the Correas' claims. Because the Correas' response failed to raise
genuine issues of fact on each element of their malpractice claims, we affirm the judgment
of the trial court.



 Paul W. Green,

 Justice


Do Not Publish
1. These included sepsis, cerebrovascular accident, dehydration, permanent tracheostomy, insulin-dependent
diabetes, seizure disorders, multiple contractures of the extremities, a PEG tube, and multiple infected decubitus ulcers.
2. Appellants claim Dr. Gallegos: (1) failed to provide Manuel with the proper care to prevent ulcers during
his stay at Baptist memorial; (2) failed to provide Manuel with the proper care to treat and heal his ulcers; (3) failed
to obtain proper wound care consultations for Manuel; (4) failed to keep Manuel at Baptist Hospital until he was
medically ready for discharge; and (5) negligently discharged Manuel to a facility that was not capable of properly
caring for Manuel's multiple skin lesions and wounds.
3. Although appellants' petition is not specific as to the "injuries" Manuel sustained, their own expert testified
all Manuel's ulcers healed except the ulcerated right heel that led to the amputation. Thus the injury in question must
be the amputation.