Alita Gail HALL, Individually and
as Next of Friend of Homer
Lee Hall, Appellant,

v.

TOMBALL NURSING CENTER, INC.,
and Dr. Norman Graham,
Appellees.

No. 14–95–0045–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 11, 1996.

Rehearing Overruled Aug. 8, 1996.

**618**

Ralphaell V. Wilkins, Houston, for appellants.

John P. Scott, Michael F. Hord, Jr., Rod E. Gorman, Houston, for appellees.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

FOWLER, Justice.

This medical malpractice case comes to us on appeal as the result of a summary judgment in favor of appellees, Norman Graham, M.D. (Dr. Graham) and Tomball Nursing Center, Inc. (Tomball). In three points of error, appellants claim the trial court erred in granting summary judgment. We affirm in part and reverse and remand in part.

### FACTS AND PRIOR POSTURE

Appellants, Alita Gail Hall, in her individual capacity and as guardian of her father, Homer Lee Hall, allege Dr. Graham and Tomball caused appellant, Homer Lee Hall, to lose his leg. Appellant was a patient at Tomball Nursing Center. During his stay at Tomball appellant had multiple health problems. One of the health problems appellant suffered from was a large ulcer that developed on his leg. Dr. Graham, a general practitioner, treated the ulcer but appellant's poor circulation caused the condition eventually to deteriorate. Dr. Graham instructed Tomball to send appellant to the VA hospital. While appellant was at the VA hospital, it was determined that his leg would have to be amputated. Appellant's leg was amputated August 15, 1990.

Appellants filed suit against Tomball and Dr. Graham on October 27, 1992. Both Graham and Tomball filed motions for summary judgment. Appellants did not file a written response to either motion. On September 7, 1993, the trial court granted Dr. Graham's summary judgment, and on September 15, 1994, the trial court granted Tomball's motion for summary judgment.

### STANDARD OF REVIEW

The movant for summary judgment must show that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We take evidence favorable to the non-movant as true, and indulge every reasonable inference in the non-movant's favor. *Id.* Summary judgment for the defendant is proper when the proof shows that

there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *White v. Wah*, 789 S.W.2d 312, 315 (Tex.App.—Houston [1st Dist.] 1990, no writ). In other words, a defendant must disprove, as a matter of law, one of the essential elements of a plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). In the absence of a response to a motion for summary judgment, the only issue before an appellate court is whether the motion for summary judgment is sufficient as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

█ Tomball and Graham moved for summary judgment on two grounds. First, that the suit was untimely filed and therefore barred by the statute of limitations and secondly that neither defendant (1) was negligent in their care of Hall, or (2) proximately caused any damage to Hall. The judgments for the two parties did not state which of the defendants' grounds were reason for the judgment. In such a case, if either ground supports the judgment, we are to affirm it. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Although appellants attack both grounds on appeal, we do not address the statute of limitations question with regard to either defendant's motion. During oral argument counsel for Dr. Graham conceded that appellants had timely filed their suit and therefore that the judgment could not stand if it were based on this ground. Moreover, the issue is moot with regard to Tomball because we conclude that Tomball negated negligence and causation.

## POINTS OF ERROR

### Dr. Graham's Summary Judgment

█ Appellants assert in their second point of error that the trial court erred in granting summary judgment for Dr. Graham because his affidavit is insufficient. Specifically, appellants assert the affidavit fails (1) to state the appropriate standard of care for Hall's specific condition, (2) does not controvert Hall's allegation that Dr. Graham al-lowed Hall's leg to become gangrene, and (3) the affidavit is conclusory. We agree. Dr. Graham's affidavit states the following:

When I first saw Homer Lee Hall at Tomball Nursing Center, he had multiple severe problems, including a left middle cerebral artery hemispheric cerebrovascular accident three weeks prior to admission, global aphasia, right hemiparesis and plegia with right homonymous hemianopsia, urinary tract infection, hematuria secondary to foley removal, a history of ethanol abuse, a history of smoking, a history of peripheral vascular disease, status post-mycardial infarction and coronary artery disease, and a history of previous cerebrovascular accident. I treated the patient periodically at Tomball Nursing Center. During this period, the patient was unable to communicate due to a previous stroke. I was called to check on the patient periodically, as a general practitioner, and the patient was referred to the VA Hospital as his condition became more serious. During the course of my treatment of Homer Lee Hall, I prescribed lasix, trental, and coumadin. During the course of my treatment, Mr. Hall developed a large ulcer on his leg and I prescribed antibiotic therapy. Due to the patient's poor circulation, his condition eventually deteriorated and I instructed the nursing home to send Mr. Hall to the VA Hospital for treatment. During the treatment Mr. Hall received at the VA Hospital, it was determined that an amputation of his leg was necessary on August 13, 1990. I next saw Mr. Hall on August 31, 1990, and his condition had improved dramatically.

As a general practitioner, I am familiar with the standard of care for the treatment of a patient such as Homer Lee Hall. In a patient such as Mr. Hall, the proper treatment is to monitor the patient's condition and refer the patient to a hospital such as the VA Hospital in the event his condition worsens. It is my expert opinion that my care and treatment of Homer Lee Hall was in accordance with the appropriate standard of care for such, and was the same care and treatment that would have been performed by a reasonably prudent physician acting under the same or similar cir-

cumstances. This standard of care is in accord with the standard prevalent for general practitioners in Harris County, Texas, and in similar communities in 1990 and thereafter.

I have reviewed Plaintiff's Original Petition and I specifically deny each and every allegation contained in that instrument. At all times I properly, correctly, and timely cared for and treated Homer Lee Hall's condition. My care and treatment was entirely consistent with the appropriate standard of care for such.

It is my expert opinion, based upon a reasonable degree of medical probability, that no act or omission on my part caused any damages or injuries to Homer Lee Hall. Furthermore, it is my opinion that the damages that plaintiffs now complain of in their Amended Petition were in no way caused by the care or treatment performed by me for Homer Lee Hall.

All of the opinions that I have expressed herein are based upon a reasonable degree of medical probability.

The threshold question in a medical malpractice case is the standard of care. In medical malpractice cases, the standard of care is established by expert testimony. *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex.App.—El Paso 1995, writ denied); *Armbruster v. Memorial Southwest Hospital*, 857 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Testimony from an interested expert, such as the defendant doctor, can establish the standard of care and support summary judgment if the testimony is clear, direct, positive, otherwise credible, free of contradictions and inconsistencies, and capable of being readily controverted. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *Chopra*, 892 S.W.2d at 233; *Armbruster*, 857 S.W.2d at 941. It is not sufficient for an expert to simply state that he or she knew the standard of care and conclude it was met. Rather, the expert must state what the standard is and explain how the defendant's acts met it. *Chopra*, 892 S.W.2d at 233; *Nicholson v. Naficy*, 747 S.W.2d 3, 4–5 (Tex.App.— Houston [1st Dist.] 1987, no writ).

Dr. Graham contends that his affidavit meets these criteria, properly setting forth the standard of care for a general practitioner treating a nursing home patient in Harris County, Texas. However, we find the affidavit conclusory regarding both the standard of care and what he did to meet the standard of care. As to the standard of care, Dr. Graham states that a general practitioner should "monitor the patient's condition and refer the patient to a hospital such as the VA Hospital in the event his condition worsens." Dr. Graham does not state what specific actions constitute "monitoring." In addition, had Dr. Graham adequately defined monitoring, he still did not give enough specifics concerning what he did in this case to allow a factfinder to ascertain whether he met the standard of care. For example, Dr. Graham did not say how often he personally visited Hall, what he did when he visited Hall, precisely how Hall's condition worsened, and what he did in response to that, or how he determined eventually that he needed to refer Hall to the V.A. Hospital. Moreover, although Dr. Graham's affidavit states that no act or omission on his part caused damage to Hall, it is a conclusory statement since we have no idea what Dr. Graham did in "monitoring" Hall. In short, the affidavit is so conclusory and lacks so much factual detail that Hall would have had great difficulty controverting it had he tried. *Schexnider v. Scott & White Memorial Hosp.*, 906 S.W.2d 659, 661–662 (Tex.App.— Austin 1995, writ requested). In sum, we conclude Dr. Graham's affidavit does not set out the applicable standard of care and does not negate proximate cause.

Dr. Graham also urges that he is entitled to summary judgment because the Halls did not file a written response to the motion for summary judgment containing a controverting expert affidavit. The Halls would have had to file a controverting affidavit if Dr. Graham's affidavit had established his right to summary judgment by properly setting forth the standard of care and showing no proximate cause between his actions and the amputation. *MMP Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Armbruster*, 857 S.W.2d at 944. Since the affidavit did not do this, the burden did not shift to the Halls to produce

evidence of their own. *Id.* We sustain appellant's second point of error.

### Tomball's Summary Judgment

■ Appellants assert in their third point of error that the trial court erred in granting Tomball's motion for summary judgment because it was based upon insufficient affidavits. Because appellants failed to file any response, the only issue before this court is whether Tomball's summary judgment evidence entitles it to judgment as a matter of law. *Clear Creek,* 589 S.W.2d at 678. A summary judgment may be based on the uncontroverted affidavit of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX.R. CIV. P. 166a(c); *Republic Nat. Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986). Hanlon's affidavit states the following among other things:

> I am Secretary/Treasurer of Tomball Nursing Center, Inc.[,] and have been since the Corporation was created on June 1, 1991. At the time of the alleged malpractice, August 15, 1990, Homer Lee Hall was a patient of and under the care of CANTEX Health Care Centers nursing home in Tomball, Texas. The assets of this nursing home were purchased from them by Tomball Nursing Center, Inc. on June 1, 1991. At no time did or has Tomball Nursing Center, Inc.[,] assumed the liabilities of CANTEX Health Care Centers for any duties it may have owed Homer Lee Hall. At no time has Tomball Nursing Center, Inc.[,] rendered any services, treatment or care. to Homer Lee Hall.

Rod Gorman's affidavit stated that he had represented Tomball since its incorporation and represented Tomball in its asset purchase from CANTEX Health Care Centers on June 1, 1991. At no time did Tomball agree to assume liabilities of CANTEX Health Care Centers associated with its operation of its nursing home or for care rendered to Homer Lee Hall. We hold Hanlon's and Gorman's testimony is clear, positive and direct, and could have been readily controverted.

■ A defendant is entitled to summary judgment if it negates at least one element of the plaintiff's cause of action. *Lear Siegler,* 819 S.W.2d at 471. Tomball proved that Hall was under the care of CANTEX Health Care Centers and that Tomball Nursing Center, Inc., its successor, did not assume liability for the care given to Hall, and thus negated proximate cause and breach of duty. Since the defendant met his burden, appellants then had the burden to introduce evidence raising fact issues with respect to these elements. *Federated Dept. Stores, Inc. v. Houston Lighting & Power Co.,* 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ). However, appellants failed to do this. They did not provide any evidence to show a duty or breach thereof or that Tomball proximately caused any damage to Hall.

For the foregoing reasons, we find that Hanlon's and Gorman's affidavits are sufficient and not conclusory, and that Tomball proved as a matter of law it is entitled to summary judgment. Therefore, we overrule appellants' third point of error.

As noted previously, in light of our conclusion that Tomball proved it breached no duty and did not proximately cause any damage to Hall, and therefore is entitled to a judgment on this ground, we do not address the statute of limitations issue (point of error one) as it pertains to Tomball.

The judgment of the trial court is affirmed in part and reversed and remanded in part.