**Sharon Ann GRIFFIN and Dennis Griffin, Appellants,**

v.

**The METHODIST HOSPITAL, Appellee.**

No. 14–96–00612–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 26, 1997.

John Gano, Houston, for appellants.

Oscar Luis Delarosa, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

This is an appeal from a summary judgment in favor of appellee, The Methodist Hospital, in a medical malpractice action. Appellant, Sharon Ann Griffin, was admitted to the hospital with a variety of potentially fatal medical conditions. During her lengthy hospitalization, she developed a condition known as achilles tendon contracture, or "foot drop." This condition causes the achilles tendon to contract involuntarily and pull the toes of the feet downward, thereby impeding the patient's ability to walk. Appellant and her husband sued the hospital and her treating physicians,[1] claiming that their negligent treatment proximately caused appellant's injury. The hospital moved for summary judgment on the ground that its nurses and physical therapists had fully com-

---

1. Appellants' claims against Dr. Scott Lloyd were dismissed, and their claims against Dr. Mario Gonzalez were severed.

plied with the standard of care. The trial court granted the hospital's motion, which ruling forms the basis of this appeal. In three points of error, appellant claims summary judgment was improper because (1) there exist genuine issues of material fact, and (2) the hospital's affidavits were defective and should not have been considered by the trial court. Because we find the hospital's summary judgment proof did not entitle it to judgment as a matter of law, we reverse and remand.

### Standard of Review

The Texas Supreme Court has clearly articulated the appropriate standard to be followed when reviewing a summary judgment:

1. the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law;

2. in deciding whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the non-movant as true; and

3. the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied). A defendant moving for summary judgment has the burden of demonstrating that no material fact issue exists for the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). A defendant meets this burden by submitting competent summary judgment proof that negates, as a matter of law, at least one element of the plaintiff's cause of action. *Id.*

In the present case, the essential element of appellant's malpractice claim the hospital sought to negate was its alleged breach of the standard of care. *See Davis v. Manning*, 847 S.W.2d 446, 449 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The summary judgment proof submitted to demonstrate compliance with the standard of care consisted of the affidavits of a nurse and physical therapist who attended appellant during her hospitalization. We must first determine whether the hospital's summary judgment proof entitled it to judgment as a matter of law. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d at 678.

Because assessing the standard of care in a medical malpractice case requires skills not ordinarily possessed by a lay person, the fact finder must be guided by expert medical testimony. *St. John v. Pope* 901 S.W.2d 420, 423 (Tex.1995); *Rallings v. Evans*, 930 S.W.2d 259, 262–63 (Tex.App.—Houston [14th Dist.] 1996, no writ). A summary judgment may be based on the uncontroverted affidavit of an interested expert witness if it is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. Tex.R. Civ. P. 166a(c); *Anderson v. Snider*, 808 S.W.2d at 55. An interested expert's affidavit is sufficient to establish compliance with the standard of care where the affiant "(1) states that he is familiar with the applicable standard of care, (2) *states with specificity each examination and treatment performed*, (3) states that the acts of the physician were consistent with the appropriate standard of care, and (4) states that there was no causal connection between the physician's acts and the plaintiff's injury." *Edwards v. Garcia–Gregory*, 866 S.W.2d 780, 785 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (emphasis added) (citing *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 216–17 (Tex.App.—Houston [1st Dist.] 1986, no writ)); *Tilotta v. Goodall*, 752 S.W.2d at 164.

In support of its motion for summary judgment, the hospital submitted the affidavits of Annabelle Borromeo, a registered nurse, and Claire Johnson Sweatt, a physical therapist. Borromeo's affidavit recites Sharon Griffin's admitting diagnosis, and states that she "underwent various surgical procedures and medical treatments" in connection with her condition. The standard of care for treating a critical patient such as Griffin is described as follows: "(1) assess the patient;

(2) implement and carry out physicians' orders; and (3) prioritize care and treatment objectives." Borromeo described the nurses' compliance with the standard of care as follows:

> ... the nurses assigned to her properly assessed her condition and charted her progress, beginning on the day she was admitted to the hospital and continuing throughout her entire stay. The nurses followed the orders delivered to them by Sharon Griffin's treating physicians and performed their nursing obligations consistent with these orders. The nurses performed their duties in an organized fashion, prioritizing their care and treatment objectives and giving due emphasis to tasks having the highest priority, while performing both high-priority and low-priority tasks in a timely and appropriate manner.

Borromeo states she reviewed the medical records, which were not attached to her affidavit filed with the court because they were too "voluminous," and concludes that the hospital nurses complied with the standard of care.

Like Borromeo's affidavit, the affidavit of the physical therapist, Claire Johnson Sweatt, recites Sharon Griffin's admitting diagnosis, and states that she underwent "various surgical procedures and medical treatments" in connection therewith. Sweatt describes the standard of care for a physical therapist as follows: "(1) assess current neuromuscular status; (2) determine areas of deficiency in neuromuscular status; and (3) implement appropriate therapeutic intervention and evaluate effectiveness thereof on an ongoing basis." Sweatt states that Griffin was first seen by a physical therapist on October 14, 1989, but due to her medical instability physical therapy was not appropriate until November 8, 1989, when her condition had sufficiently stabilized. Over the next five days, a physical therapist evaluated Griffin, which evaluation Sweatt describes as follows:

> ... the therapist assessed Sharon Griffin's neuromuscular status, determined areas of deficiency, and performed therapeutic intervention as indicated by the results of the neuromuscular assessment. Ms. Griffin received physical therapy several days per week for the remainder of her stay at The Methodist Hospital. The therapeutic intervention continued during her entire stay and was continually reevaluated and adjusted as indicated by her progress and medical conditions.

Sweatt states that treatment of achilles tendon contractures is wholly within the responsibility of the patient's treating physician, who "may partially delegate this responsibility by issuing appropriate orders to other health care professionals, including physical therapists." She states that Griffin's physicians ordered physical therapy treatment for her, and that "the physical therapists at The Methodist Hospital followed these orders in a timely and appropriate manner, complying with the standard of care at all times." Like nurse Borromeo, Sweatt states that she reviewed the medical records, which were too voluminous to attach to her affidavit filed with the court, and concludes "the physical therapists of The Methodist Hospital fully complied with the applicable standard of care."

We find the foregoing affidavits conclusory regarding both the standard of care and the hospital's compliance therewith. The affidavits state the standard of care for attending Griffin generally, but do not address the care or treatment necessary to prevent the condition made the basis of her complaint, achilles tendon contracture. Without specifying when or how, Borromeo attests that the nurses assigned to Griffin "properly assessed her condition." Similarly, Sweatt attests that a physical therapist "assessed Sharon Griffin's neuromuscular status, determined areas of deficiency, and performed therapeutic intervention as indicated," but does not specify what the status, deficiency or intervention were. Both indicate they were to follow physicians' orders regarding physical therapy, but fail to articulate what those orders were or how they complied with them.

 It is not sufficient for an expert to simply state that he or she knew the standard of care and conclude it was met. *Hall v. Tomball Nursing Center, Inc.*, 926 S.W.2d 617, 620 (Tex.App.—Houston [14th Dist.]

1996, no writ). Rather, the expert must state what the standard of care is for treatment of the patient's condition and state with specificity each treatment and examination performed. *Id.* For example, in *Hall* we found the physician's statement that he appropriately "monitored" the patient's condition conclusory because he failed to state what specific actions constituted "monitoring." *Id.* Even if "monitoring" had been described, the doctor still failed to provide enough specifics to allow a fact finder to ascertain whether he met the standard of care in that he did not state how often he visited the patient, what he did when he visited, precisely how the patient's condition worsened and what he did in response. *Id.* The affidavits submitted by the nurse and physical therapist in the present case are similarly conclusory, and therefore are not competent to establish as a matter of law that the hospital complied with the applicable standard of care.[2] Accordingly, we sustain appellant's first point of error.

Because we have concluded that the hospital failed to meet its summary judgment burden, we do not address appellant's remaining points of error.

The judgment of the trial court is reversed and remanded.

---

2. Although appellant did not object to the hospital's summary judgment proof as conclusory, affidavits containing defects in substance need not be objected to and may be addressed for the first time on appeal. *Ramirez v. Transcontinental Ins. Co.,* 881 S.W.2d 818, 828 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Wilmer v. Laidlaw Waste Sys., Inc.,* 890 S.W.2d 459, 467 (Tex. App.—Dallas 1994), *aff'd,* 904 S.W.2d 656 (Tex. 1995).