# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00808-CV

### NGL Water Solutions Eagle Ford, LLC, Appellant

### v.

### Railroad Commission of Texas and Blue Water Disposal, Appellees

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. D-1-GN-17-001119, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The trial court affirmed the Railroad Commission's granting of Blue Water Disposal's permit application for a commercial saltwater disposal injection well. *See* Tex. Water Code § 27.031 (requiring permit from Railroad Commission to drill and operate injection well to dispose of oil and gas waste). The trial court also denied NGL Water Solutions Eagle Ford, LLC's alternative claims for declaratory relief. Raising two issues, NGL argues that the Railroad Commission erred when it denied NGL "party status" to protest Blue Water Disposal's permit and when it subsequently approved and issued the permit administratively. For the following reasons, we affirm the portion of the trial court's order affirming the challenged order and dismiss NGL's claims for declaratory relief.

**Background**

**Statutory and Regulatory Framework**

To give context to the parties' dispute, we begin with a brief overview of the Injection Well Act, which governs the permitting process for underground injection wells in this State. *See generally* Tex. Water Code §§ 27.001–.157; *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 626–27 (Tex. 2011) (discussing Injection Well Act). Under the Injection Well Act, the Railroad Commission has jurisdiction over injection wells used "to dispose of oil and gas waste," *see* Tex. Water Code §§ 27.031, .051(b), and the Texas Commission on Environmental Quality (TCEQ) has jurisdiction over injection wells used for other purposes, *see* Tex. Water Code §§ 27.011, .051(a).

The Railroad Commission may grant an application and issue a permit for an injection well within its jurisdiction if it finds, among other factors, that "the use or installation of the injection well is in the public interest" and that "the applicant has made a satisfactory showing of financial responsibility if required by Section 27.073." *Id.* § 27.051(b)(1), (4); *see id.* § 27.073(a) (stating that person to whom injection well permit is issued "may be required" by Railroad Commission "to maintain a performance bond or other form of financial security" to ensure that abandoned injection well is properly plugged); *see also Texas Citizens*, 336 S.W.3d at 628–32 (interpreting and discussing "public interest" in section 27.051(b) of Injection Well Act). Unlike the TCEQ, *see* Tex. Water Code § 27.051(d) (providing factors for TCEQ to consider in making "public interest" determination), the Railroad Commission does not have statutory factors that it must consider in a "public interest" determination.

2

Pursuant to the Injection Well Act, the Railroad Commission adopted Statewide Rule 9 to address injection wells within its jurisdiction. *See id.* § 27.034(a) (requiring Railroad Commission to adopt rules and procedures for performance of duties under chapter, including adopting "rules for notice and procedure of public hearings"); 16 Tex. Admin. Code § 3.9 (Railroad Comm'n, Disposal Wells).[1] The rule defines "affected person" for purposes of Statewide Rule 9 to mean "a person who has suffered or will suffer actual injury or economic damage other than as a member of the general public or as a competitor, and includes surface owners of property on which the well is located and commission-designated operators of wells located within one-half mile of the proposed disposal well." 16 Tex. Admin. Code § 3.9(5)(E)(ii); *see* Tex. Water Code § 27.034(a) (requiring Railroad Commission to "define 'affected person' by rule"). A hearing is required if "a protest from an affected person or local government is made to the commission . . . or if the commission or its delegate determines that a hearing is in the public interest." 16 Tex. Admin. Code § 3.9(5)(E)(i). Without a protest from an "affected person," the Railroad Commission's "delegate may administratively approve the application." *Id.* § 3.9(5)(F).[2]

**Administrative Proceedings**

In April 2016, Blue Water applied for a permit from the Railroad Commission to operate a commercial injection well. The Railroad Commission notified Blue Water in May 2016

---

[1]    Citations to Title 16 of the Administrative Code are to rules adopted by the Railroad Commission.

[2]    Although not relevant here, if the Railroad Commission's delegate denies administrative approval, "the applicant shall have a right to a hearing upon request." 16 Tex. Admin. Code § 3.9(5)(F).

that it had determined that Blue Water's application was administratively complete but that it was unable to approve the application administratively because it had received a protest from NGL to the application. In response, Blue Water requested a hearing, and the hearing occurred on August 10, 2016, before a technical examiner and an administrative law judge (collectively "examiners"). Blue Water's evidence and argument focused principally on NGL's status as a competitor, arguing that NGL was not an "affected person" entitled to protest the application and, thus, that NGL did not have standing. As support for its position, Blue Water introduced evidence that NGL was a competitor. *See id.* § 3.9(5)(E)(ii) (defining "affected person" to mean "person who has suffered or will suffer actual injury or economic damage other than as a member of the general public or as a competitor"). Evidence showed that NGL operated disposal wells, including one that would compete with Blue Water's proposed well, but that NGL did not operate a well that was within one-half mile of the location of Blue Water's proposed well. *See id.* (defining "affected person" to include "commission-designated operators of wells located within one-half mile of the proposed disposal well").

NGL did not dispute that it would be a competitor of Blue Water's proposed well. Its evidence focused on its positions that the permit application was not in the "public interest" because there was no present industry need for additional disposal capacity in the area of the proposed well and that Blue Water had failed to show financial responsibility. *See* Tex. Water Code § 27.051(b)(1), (4). NGL introduced evidence that it had existing injection wells with excess capacity, including some that were currently idle, to support its position that it was not in the public

4

interest to grant the permit application. NGL also presented evidence that Blue Water had not provided financial security.

The examiners' proposal for decision (PFD) recommended that the Railroad Commission conclude that NGL was not an "affected person" as defined by Statewide Rule 9 and remand the permit application for further administrative review and consideration. The examiners found that NGL "did not present sufficient evidence to demonstrate that it is a person who has suffered or will suffer actual injury or economic damage other than that of the general public or as a competitor." The conclusions of law included that NGL was not an "affected person" as that term is defined in Statewide Rule 9 and that it was not entitled to party status to protest Blue Water's permit application. In its order dated December 6, 2016, the Railroad Commission adopted the examiners' findings of fact and conclusions of law and remanded the permit application for further administrative review and consideration. NGL filed a motion for rehearing, and the Railroad Commission denied the motion in February 2017. Following the remand of Blue Water's application for administrative review, the Railroad Commission approved and issued the permit on March 9, 2017.

**Litigation Commenced**

Shortly after the Railroad Commission issued Blue Water's permit, NGL filed suit seeking judicial review of the December 2016 order remanding the permit application for administrative review and the Railroad Commission's subsequent approval and issuance of Blue Water's permit. As support for the trial court's jurisdiction to consider its claims seeking judicial review, NGL cited the Administrative Procedure Act (APA) and the Texas Natural Resources Code.

*See* Tex. Gov't Code § 2001.176 (addressing petitions initiating judicial review); Tex. Nat. Res. Code § 85.241 (authorizing "interested person" to file suits for judicial review of Commission orders "relating to oil or gas and the waste of oil or gas"). In the alternative to its claims for judicial review, NGL sought declaratory judgments that: "(i) the [Railroad] Commission's refusal to recognize NGL's status as a party to the contested case over Blue Water's permit application and consequent remand of the application from the Hearings Division to the Technical Processing department was error and violated NGL's rights, and (ii) Blue Water's permit was unlawfully issued." *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 (UDJA). NGL asserted that the December 2016 order violated its rights to due process and equal protection of the laws.

The parties filed briefing on the merits, and the Railroad Commission filed a partial plea to the jurisdiction asserting that the trial court lacked jurisdiction over NGL's claims for declaratory relief and its APA claim challenging Blue Water's permit. Following a hearing, the trial court affirmed the Railroad Commission's order and denied NGL's claims for declaratory relief. This appeal followed.

## Analysis

### Jurisdiction

We begin with threshold issues raised by the Railroad Commission that challenge the trial court's jurisdiction to consider NGL's claims. Although the Railroad Commission did not file a notice of appeal, *see* Tex. R. App. P. 25.1(c) (stating that appellate court may not grant party who does not file notice of appeal "more favorable relief than did the trial court except for just cause"), we address its issues because they challenge the trial court's subject matter jurisdiction, *see Oncor*

6

*Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018) (explaining that challenge to court's subject matter jurisdiction cannot be waived); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) (Lehrmann, J., dissenting) ("Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte.").

### Suit for Judicial Review

In its first issue, the Railroad Commission argues that the trial court did not have jurisdiction to consider NGL's claims that sought judicial review of the December 2016 order and its subsequent grant and issuance of the Blue Water's permit because NGL was not a "party" to the proceeding that resulted in the Railroad Commission granting the permit. As support for its position, the Railroad Commission cites section 105.001(a) of the Texas Utilities Code, which states: "Any party to a proceeding before the railroad commission is entitled to judicial review under the substantial evidence rule." *See* Tex. Util. Code § 105.001(a); *Texas Citizens*, 336 S.W.3d at 624 (citing and stating that "Utilities Code generally requires a court to review a decision of the [Railroad] Commission under a substantial evidence standard"). According to the Railroad Commission, NGL's claims are barred by sovereign immunity because it was not a "party." *See Coastal Habitat All. v. Public Util. Comm'n of Tex.*, 294 S.W.3d 276, 281–82 (Tex. App.—Austin 2009, no pet.) (interpreting similar language to section 105.001 that is found in section 15.001 of Texas Utilities Code to preclude putative party who was denied intervention in Public Utility Commission proceeding from bringing suit for judicial review). Sovereign immunity generally deprives courts of subject matter jurisdiction over suits against agencies of the State, like the

7

Railroad Commission. *See State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Further, "[i]t is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000).

NGL counters that the trial court had jurisdiction under section 2001.171 of the APA to consider its claims seeking judicial review because the Injection Well Act "neither specifically authorizes nor prohibits judicial review of the decision." *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173 (Tex. 2004) (holding that section 2001.171 of APA provides independent right to judicial review of decision in contested case "when the agency's enabling statute neither specifically authorizes nor prohibits judicial review of the decision"); *see also* Tex. Gov't Code § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."). The parties agree that the Injection Well Act does not address the right to judicial review. *See generally* Tex. Water Code §§ 27.001–.157. NGL also relies on section 85.241 of the Texas Natural Resources Code to support

the trial court's jurisdiction, *see* Tex. Nat. Res. Code § 85.241,[3] and argues that section 105.001 of the Texas Utilities Code does not apply.

Even if we assume that section 105.001 of the Texas Utilities Code limits the right to judicial review to parties to proceedings before the Railroad Commission, we conclude that NGL was a party to the proceeding that resulted in the December 2016 order. *See* Tex. Util. Code § 105.001(a). NGL participated in the contested-case hearing, offering argument and evidence, was assessed hearing transcript costs, and filed a motion for rehearing, which the Railroad Commission denied. *See* 16 Tex. Admin. Code §§ 1.2(21) (Definitions) (defining "party" to mean "person named or admitted as . . . protestant . . . in a contested case before the [Railroad] Commission"), (26) (defining "protestant" to mean "person opposing an application or permit submitted to the [Railroad] Commission"), 1.111(b) (Reporters and Transcripts) (stating that "costs of the original transcripts shall be assessed to all parties equally unless otherwise directed by the examiner or required by law"), 1.128 (Motions for Rehearing) (addressing motions for rehearing and providing deadlines for parties to file motions for rehearing after decision or order signed);[4] *see also* Tex. Gov't

---

[3] Section 85.241 of the Texas Natural Resources Code provides:

Any interested person who is affected by the conservation laws of this state or orders of the commission relating to oil or gas and the waste of oil or gas, and who is dissatisfied with any of these laws or orders, may file suit against the commission or its members in a court of competent jurisdiction in Travis County to test the validity of the law or order.

Tex. Nat. Res. Code § 85.241; *see H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 601–02 (Tex. App.—Austin 2000, pet. denied) (discussing section 85.241 of Texas Natural Resources Code).

[4] In August 2017, the Railroad Commission amended Chapter 1, renumbering many of its sections without modifying their substance in any material respect for purposes of this appeal. *See*

Code § 2001.003(4) (defining "party" to mean "person or state agency named or admitted as a party").

We also observe that the December 2016 order was subsumed in the Railroad Commission's subsequent decision to grant Blue Water's permit application. *See Walter West, P.E. v. Texas Comm'n on Envtl. Quality*, 260 S.W.3d 256, 263–64 (Tex. App.—Austin 2008, pet. denied) (concluding TCEQ's denial of requests for contested case hearings and ALJ's order remanding application to executive director were interim orders that were subsumed in final decision to approve permit application and "subject to judicial review on appeal therefrom" (citing *City of Corpus Christi v. Public Util. Comm'n of Tex.*, 572 S.W.2d 290, 299–300 (Tex. 1978) (op. on reh'g))); *see also City of Corpus Christi*, 572 S.W.2d at 299–300 (explaining that review of agency's interim orders occurs upon appeal from final decision).

In this procedural context, even if section 105.001 of the Texas Utilities Code limits the right to judicial review to parties, we conclude that the trial court had jurisdiction over NGL's claims seeking judicial review of the December 2016 order. *See, e.g.*, *Texas Citizens*, 336 S.W.3d at 622–23 (considering claims brought in suit for judicial review of Railroad Commission's approval of application for injection well permit following contested-case hearing); *Rosenthal v. Railroad Comm'n*, No. 03-09-00015-CV, 2009 Tex. App. LEXIS 6522, at *1 (Tex. App.—Austin Aug. 20, 2009, pet. denied) (mem. op.) (same); *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 599, 601–02 (Tex. App.—Austin 2000, pet. denied) (concluding that trial court properly exercised jurisdiction to consider whether appellant was "affected person" entitled to notice

---

42 Tex. Reg. 4131 (Aug. 21, 2017). We cite the sections of the current version of Chapter 1.

10

and that substantial evidence supported Railroad Commission's decision that appellant was not "affected person"). Thus, we overrule the Railroad Commission's first issue.

### Claims for Declaratory Relief

In its second issue, the Railroad Commission argues that the trial court lacked jurisdiction over NGL's claims for declaratory relief because the UDJA does not waive the Railroad Commission's sovereign immunity from claims challenging its orders and NGL has failed to identify any other statute that would waive sovereign immunity for these claims. During oral argument, counsel for NGL affirmatively represented to this Court that it was abandoning its claims for declaratory relief. Based on NGL's affirmative representation abandoning the UDJA claims, we dismiss those claims. *See, e.g.*, *Wojcik v. Wesolick*, 97 S.W.3d 335, 336-37 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (concluding that appellee had abandoned ground that asserted to trial court by affirmatively "stating in its brief that it 'does not contend at this time [ground asserted to trial court]'"); *Hall v. Tomball Nursing Ctr., Inc.*, 926 S.W.2d 617, 619 (Tex. App.—Houston [14th Dist.] 1996, no writ) (concluding that appellate court did not need to address ground where counsel affirmatively "conceded" during oral argument that "judgment could not stand if it were based on this ground").

### NGL's Claims Seeking Judicial Review

Having determined that the trial court had jurisdiction to consider NGL's claims seeking judicial review of the December 2016 order, we turn to NGL's issues that challenge the

order and the Railroad Commission's subsequent approval and issuance of Blue Water's permit. We begin with the applicable standard of review.

**Standard of Review**

Our review of NGL's claims seeking judicial review of the Railroad Commission's order is governed by section 2001.174 of the APA. *See* Tex. Gov't Code § 2001.174; *Texas Citizens*, 336 S.W.3d at 624; *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 548–49 (Tex. App.—Austin 2011, pet. denied) (describing standard of review under section 2001.174 of APA). Under this standard, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence or questions committed to agency discretion." Tex. Gov't Code § 2001.174; *see Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984) ("The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness."). But we must reverse or remand the case to the state agency for further proceedings:

> if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (A)   in violation of a constitutional or statutory provision;
>
> (B)   in excess of the agency's statutory authority;
>
> (C)   made through unlawful procedure;
>
> (D)   affected by other error of law;
>
> (E)   not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

12

(F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2).

With respect to subsection (E) of section 2001.174(2), "'substantial evidence' does not mean a large or considerable amount of evidence, but such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of law." *Slay*, 351 S.W.3d at 549. "Substantial-evidence analysis entails two component inquiries: (1) whether the agency made findings of underlying facts that logically support the ultimate facts and legal conclusions establishing the legal authority for the agency's decision or action and, in turn, (2) whether the findings of underlying fact are reasonably supported by evidence." *AEP Tex. Commer. & Indus. Retail, Ltd. P'ship v. Public Util. Comm'n of Tex.*, 436 S.W.3d 890, 905 (Tex. App.—Austin 2014, no pet.).

We presume that the agency's decision is supported by substantial evidence, and the burden is on the appellant to demonstrate otherwise. *Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 791 (Tex. App.—Austin 2012, no pet.) (citing *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). The evidence in the record may preponderate against the agency's decision but still provide a reasonable basis for the agency's decision and thereby meet the substantial evidence standard. *Texas Gen. Land Office v. Crystal Clear Water Supply Corp.*, 449 S.W.3d 130, 135 (Tex. App.—Austin 2014, pet. denied) (citing *Charter Med.-Dall., Inc.*, 665 S.W.2d at 452). "The question of whether an agency's decision is

13

supported by substantial evidence is a question of law, and we owe no deference to the district court's decision." *Id.* (citing *Brinkmeyer*, 662 S.W.2d at 956).

To the extent NGL's issues address statutory and rule construction, we review these questions de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Rodriguez v. Service Lloyds Ins.*, 997 S.W.2d 248, 254 (Tex. 1999). Our primary concern is the express language of the statute or rule. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009); *Rodriguez*, 997 S.W.2d at 254 (explaining that administrative rules, which have same force as statutes, are construed in same manner). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)); *see Texas Citizens*, 336 S.W.3d at 628 (explaining that courts "generally avoid construing individual provisions of a statute in isolation from the statute as a whole"); *Rodriguez*, 997 S.W.2d at 254 (explaining that, "[u]nless the rule is ambiguous, we follow the rule's clear language"). Further, we "generally uphold an agency's interpretation of a statute it is charged by the Legislature with enforcing, 'so long as the construction is reasonable and does not contradict the plain language of the statute.'" *Texas Citizens*, 336 S.W.3d at 625 (quoting *First Am. Title Ins. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)).

**December 2016 Order**

In its first issue, NGL argues that the Railroad Commission erred , both substantively and procedurally, in denying NGL "party status" to protest Blue Water's permit application. NGL

14

asserts that the Railroad Commission violated NGL's due process and equal protection rights, acted arbitrarily and capriciously, and exceeded its authority in interpreting Statewide Rule 9 to deny NGL standing. *See* Tex. Gov't Code § 2001.174(2)(A), (B), (F); *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (explaining that "[d]ue process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner"); *In re Nestle USA, Inc.*, 387 S.W.3d 610, 624 (Tex. 2012) (orig. proceeding) (explaining that equal protection clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"); *Price v. Texas Alcoholic Beverage Comm'n*, No. 01-12-01164-CV, 2014 Tex. App. LEXIS 7495, at *11 (Tex. App.—Houston [1st Dist.] July 10, 2014, pet. denied) (mem. op.) (listing elements of equal protection claim).

According to NGL, once the contested-case hearing was called on Blue Water's permit application, Statewide Rule 9(5)(E) no longer had any bearing on the proceeding or provided any legal basis for excluding NGL, as a party to the proceeding, from being heard or from ignoring the evidence that it offered at the hearing. *See* 16 Tex. Admin. Code § 1.109(b) (Hearing Procedures); *see also* Tex. Gov't Code §§ 2001.051, .060. NGL further argues that the Railroad Commission's "error in pretending no hearing ever occurred and excising record evidence was not harmless."

In its order, the Railroad Commission adopted the examiners' PFD, which included the following conclusions of law:

1.  NGL Water Solutions Eagle Ford, LLC is not an "affected person," as that term is defined in 16 Tex. Admin. Code § 3.9.

15

2. NGL Water Solutions Eagle Ford, LLC is not entitled to party status to protest Blue Water Disposal's application for a commercial permit to dispose of oil or gas waste by injection . . . .

Because it had concluded that NGL was not an affected person and no other person had protested the application, the Railroad Commission remanded Blue Water's permit application to technical permitting staff for further administrative review and consideration. *See* 16 Tex. Admin. Code § 3.9(5)(F).

The findings of fact supporting the Railroad Commission's conclusion that NGL was not an affected person included:

3. NGL Water Solutions Eagle Ford, LLC is not a Commission-designated operator of a well within one-half mile of the proposed disposal well location.

4. NGL Water Solutions Eagle Ford, LLC is not a surface owner of property on which the proposed well is located.

5. NGL Water Solutions Eagle Ford, LLC did not present evidence sufficient to demonstrate that it is a person who has suffered or will suffer actual injury or economic damage other than that of the general public or *as a competitor*.

*See id.* § 3.9(5)(E)(ii) (emphasis added). NGL concedes that it was not an operator within one-half mile of the proposed location or a surface owner, limiting its challenge to the third finding.[5] *See id.*;

---

[5] To the extent that NGL argues that its equal protection rights were violated because it was treated differently than a well operator within one-half mile of the proposed location would have been, NGL has not shown that it was "similarly situated" to an operator within one-half mile or that it was treated differently without a reasonable basis. *See Price v. Texas Alcoholic Beverage Comm'n*, No. 01-12-01164-CV, 2014 Tex. App. LEXIS 7495, at *11 (Tex. App.—Houston [1st Dist.] July 10, 2014, pet. denied) (mem. op.) ("To assert an equal protection claim, the plaintiff must establish that: (1) he or she was treated differently than other similarly situated parties; and (2) he or she was treated differently without a reasonable basis.").

16

*Madden v. State Bd. For Educator Certification*, No. 03-11-00584-CV, 2014 Tex. App. LEXIS 5444, at *11 n.4 (Tex. App.—Austin May 22, 2014, pet. denied) (mem. op.) (accepting agency's unchallenged findings as established on appeal). As to the challenged finding, Blue Water presented evidence that NGL operates commercial disposal wells, and NGL's evidence focused on its own facilities that had additional disposal capacity to support its position that it was not in the "public interest" to grant the permit application. It presented evidence that it had facilities that were idle and a disposal well that could be reconfigured to accept more waste in the area of the proposed well.

Based on our review of the record, we conclude that the Railroad Commission's remand of the permit application for administrative review and consideration complied with the plain language of Statewide Rule 9 and the Injection Well Act and did not violate NGL's rights to due process or equal protection. *See Scott*, 309 S.W.3d at 930; *Rodriguez*, 997 S.W.2d at 254; *Than*, 901 S.W.2d at 930; *Price*, 2014 Tex. App. LEXIS 7495, at *11. The Injection Well Act requires the Railroad Commission to adopt rules and procedures for the performance of its duties, including "provisions for giving notice to local governments and affected persons" as to pending applications for injection wells within its jurisdiction and to define "'affected person' by rule." *See* Tex. Water Code § 27.034(a). Statewide Rule 9 sets out the requirements for applications for injection wells within the Railroad Commission's jurisdiction and provides procedures for notice and public hearings. *See* 16 Tex. Admin. Code § 3.9.

In particular, subsection (5) of Statewide Rule 9 addresses required notices and the opportunity for hearings, and subsections (5)(E) and (F) address protests, the lack of a protest, and the definition of "affected person":

17

(E) Protested applications: (i) If a protest from an affected person or local government is made to the commission within 15 days of receipt of the application or of publication, whichever is later, or if the commission or its delegate determines that a hearing is in the public interest, then a hearing will be held on the application after the commission provides notice of hearing to all affected persons, local governments, or other persons, who express an interest, in writing, in the application. (ii) For purposes of this section, "affected person" means a person who has suffered or will suffer actual injury or economic damage other than as a member of the general public or as a competitor, and includes surface owners of property on which the well is located and commission-designated operators of wells located within one-half mile of the proposed disposal well.

(F) If no protest from an affected person is received by the commission, the commission's delegate may administratively approve the application. If the commission's delegate denies administrative approval, the applicant shall have a right to a hearing upon request. After hearing, the examiner shall recommend a final action by the commission.

*See id.* § 3.9(5). As defined in the rule, "affected persons" are not absolutely limited to certain classes of persons, but the definition contains an express exclusion—the person must suffer actual injury or economic damage other than as a member of the general public or as a competitor. As the examiners explained in the PFD, Statewide Rule 9 "excludes persons protesting an application, *solely* as a competitor to an applicant. That is not to say that a competitor is forbidden from protesting an application, but that a competitor must identify a harm *specific* to it separate and apart from injury or damage that it has (or, would) experience as an entity engaged in the same service in the same market, if challenged on its status as an 'affected person.'"

At the outset of the hearing, Blue Water challenged NGL's standing to protest the application on the ground that it was not an "affected person" and offered evidence that NGL was protesting the application solely as a competitor. Rather than presenting evidence of injury or

18

economic damage other than that of a competitor, NGL challenged the merits of the application on

the ground that the proposed well would not be in the "public interest" by offering evidence of

excess disposal capacity.[6]  *See* Tex. Water Code § 27.051(b)(1) (requiring finding that "use or

installation of injection well is in the public interest").  As noted by the examiners, however, its

evidence did not identify harm or economic damage other than as a competitor.[7]  In this context,

---

[6]  In its briefing to this Court, NGL continues to cite and rely on evidence that it offered during the hearing that showed "an average unused monthly capacity at NGL's four nearby disposal facilities of 1.6 million barrels, approximately 56% of those facilities' total permitted capacities," to support its stated position that "the local market is substantially oversaturated with disposal capacity."

[7]  In the adopted PFD (emphasis in original), the examiners detailed the parties' evidence and then explained the reasoning as to the affected person determination as follows:

> At the hearing, [Blue Water] challenged NGL's standing to protest the Application, and stated that NGL is not an "affected person" entitled to party status as a protestant. In its direct case, [Blue Water] successfully established that: 1) NGL does not operate a well within one-half mile of the proposed well location; and 2) NGL does not own the surface estate of the proposed well location.  NGL does not dispute either of those facts.

> It was therefore incumbent upon NGL to establish that it is a person who has suffered or will suffer actual injury or economic damage other than that of the general public *or as a competitor*.  However, the Examiners conclude that NGL did not demonstrate that it is an "affected person," as defined in [Statewide Rule] 9.

> . . .

> [R]ather than identifying actual injury or economic damage specific to it separate and apart than that as a competitor, NGL challenged the merits of the Application on the grounds that the proposed well is not in the "public interest," as required by the Texas Water Code. NGL opines that additional disposal capacity is not needed in the area, without identifying harm or injury that the proposed well would cause to it if permitted.  In a sense, NGL placed the cart before the horse.

19

Statewide Rule 9 expressly allowed the Railroad Commission to take the action that it did after it determined that NGL was not an affected person. Because there was no protest from an affected person, the rule expressly authorized Blue Water's application to be approved administratively. *See* 16 Tex. Admin. Code § 3.9(5)(F).

NGL argues that, even if Statewide Rule 9 limits protests to "affected persons," NGL met this requirement because its harm arises from the Railroad Commission's "imposition of differing regulatory burdens on some permit applicants but not others." As support for its position that it was an "affected person," NGL cites *Good Shepherd Medical Center, Inc. v. State*, 306 S.W.3d 825, 836 n.7 (Tex. App.—Austin 2010, no pet.). In that case, however, the dispute concerned the appellant's standing to bring constitutional challenges to statutes, *see id.* at 828, and NGL has not challenged the validity of a statute or brought a rule challenge under the APA, *see* Tex. Gov't Code § 2001.038. Thus, we do not find the analysis in that case helpful to our analysis here.

NGL also cites the Railroad Commission's final order that denied the application of Karnes County Properties, LLC for a commercial injection well and a subsequent decision following the analysis in that case as support for its position that it was an "affected person," arguing that it "raised an administratively cognizable harm that is distinct from purely economic injury." *See* Texas Railroad Comm'n, *Application of Supreme Vacuum Services, LLC Pursuant to Statewide Rule 9 for the SWD Lease, Well No. 1, Eagleville (Eagle Ford-2) Field, Karnes County, Texas*, Oil and Gas Docket No. 02-0285578 (May 20, 2014) (proposal for decision); Texas Railroad Comm'n, *Application of Karnes County Properties, LLC for Commercial Disposal Authority Pursuant to Statewide Rule 9 for the KC SWD Lease, Well No. 1 Eagleville (Eagle Ford-2) Field, Karnes*

*County, Texas*, Oil and Gas Docket No. 02-0278322 (May 7, 2013) (final order denying application). In the final order in *Karnes County*, the Railroad Commission found that the application was not in the "public interest" based in part on its finding that the applicant "did not establish that there is an industry need for the facility in this area at this time." According to NGL, the Railroad Commission's "inclusion of that 'industry need' assessment confers on NGL (and others within the 10-mile area of review) a legally cognizable interest that, as a matter of law, differs from the purely competitive injury excluded under the rule." In that case, however, the Railroad Commission did not conduct an "affected person" inquiry because the standing of a purported protestant had not been challenged.

When the standing of a purported protestant has been challenged at the outset of a hearing, the Railroad Commission previously had applied the same analysis as it did in this case. *See* Texas Railroad Comm'n, *Application of High Roller Wells, LLC Pursuant to Statewide Rule 9 for a Permit to Dispose of Oil and Gas Waste by Injection, for the Highway 285 SWD Lease, Wells No. 1 & 2, Sandbar (Bone Spring) Field, Reeves County, Texas*, Oil and Gas Docket Nos. 08-0297741 & 08-0297738 (Jan. 21, 2016) (examiner's decision). In *High Roller*, a hearing on the merits of the application was held; the hearing examiner determined that the two persons appearing in protest were not affected persons and denied them standing; and, based on these determinations, found that the subject application was no longer protested and that it could be administratively approved. Similar to the evidence presented by NGL, one of the persons appearing in protest would have been a competitor of the proposed well and offered testimony to demonstrate a lack of industry need for additional wells. The hearing examiner concluded that this evidence "did

21

demonstrate that the proposed wells would cut into [the person]'s market-share" and that the person

had "failed to articulate specifically what actual injury or economic damage it would incur *other than*

*that would be incurred as a competitor*." Applying the *High Roller* analysis here, the same is true

of NGL's evidence offered to show that the proposed well was not in the public interest.[8] *See Texas*

*Citizens*, 336 S.W.3d at 625 (generally upholding agency's interpretation of statute that it is charged

with enforcing so long as construction is reasonable and does not contradict plain language

of statute).

 Based on our review of the record, we conclude that there was substantial evidence

to support the challenged finding that NGL did not present evidence sufficient to demonstrate that

it would suffer actual injury or economic damage other than that of the general public or as a

competitor. *See* 16 Tex. Admin. Code 3.9(5)(E)(ii); *Charter Med.-Dall., Inc.*, 665 S.W.2d at 452;

*Crystal Clear Water Supply Corp.*, 449 S.W.3d at 135; *Slay*, 351 S.W.3d at 549. Thus, we conclude

that the Railroad Commission's underlying findings support its conclusion that NGL was not an

---

[8] To the extent that NGL complains that the Railroad Commission improperly excised and ignored its evidence, the administrative record reflects that the Railroad Commission considered NGL's evidence in determining that it was not an "affected person" and, based on that determination, remanded the application for administrative review. *See Texas Comm'n on Envtl. Quality v. City of Aledo*, No. 03-13-00113-CV, 2015 Tex. App. LEXIS 6940, at *16 (Tex. App.—Austin July 8, 2015, no pet) (mem. op.) (observing that, despite ALJ's refusal to admit documentary evidence into record, there was no indication in record that ALJ refused to consider evidence offered to support "affected persons" status). Further, although NGL argues in its reply brief that the Commission ignored and removed NGL's evidence that proved "overwhelmingly the glut of existing disposal capacity in the area of Blue Water's proposed well," NGL's counsel during oral argument confirmed that the administrative record contains all of the evidence that NGL offered at the hearing.

"affected person" for purposes of Statewide Rule 9. *See AEP Tex. Commer. & Indus. Retail*, 436 S.W.3d at 905.

NGL further argues that, regardless of whether it was an affected person entitled to protest the application, it was an abuse of discretion for the Railroad Commission not to afford NGL party status as an intervenor. *See Railroad Comm'n v. Ennis Transp. Co.*, 695 S.W.2d 706, 710 (Tex. App.—Austin 1985, writ ref'd n.r.e.) (explaining that generally "the allowance or denial of petitions for intervention in administrative proceedings rests in the discretion of the agency" and that "[o]rdinarily, reviewing courts do not overturn agency orders concerning the propriety of intervention"). NGL sought to intervene when it filed its motion for rehearing. *See* 16 Tex. Admin. Code § 1.37(a) (relevant here, authorizing "person who has a justiciable or administratively cognizable interest ...[to] file a petition for leave to intervene no later than five days prior to the hearing date"). Given our conclusion that substantial evidence supports the Railroad Commission's determination that NGL was not an "affected person" as defined in Statewide Rule 9, we cannot conclude that the Railroad Commission abused its discretion by denying NGL's request to intervene at the motion for rehearing stage. *See Ennis Transp. Co.*, 695 S.W.2d at 710. We overrule NGL's first issue.

**Blue Water's Permit**

In its second issue, NGL argues that granting Blue Water's permit constituted a distinct set of substantive and procedural errors. NGL argues that: (1) there are no findings that the proposed well was in the public interest or that Blue Water was financially responsible; and (2) even if findings are deemed made, they were not supported by substantial evidence. *See* Tex. Water Code

23

§ 27.051(b)(1), (4). NGL complains that the Commission failed to publish findings of fact, to properly consider industry need, and to require financial security.

Statewide Rule 9, however, expressly authorized the Railroad Commission to "administratively approve the application" because no affected person protested the application. *See* 16 Tex. Admin. Code § 3.9(5)(F). Once it was determined that NGL was not an "affected person" entitled to protest the permit application, NGL did not have standing to challenge the merits of the Railroad Commission's subsequent decision to grant and issue the permit. *See id.*; *see also Continental Cas. Ins.*, 19 S.W.3d at 397 (recognizing that "there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right"); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (stating general test for standing); *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 174–75, 179 (Tex. App.—Austin 2013, no pet.) (discussing general test for standing and fundamental distinction between "standing" before administrative agency and constitutional standing required to invoke court's subject matter jurisdiction); *see also Sierra Club v. Texas Comm'n on Envtl. Quality,* No. 03-14-00130-CV, 2016 Tex. App. LEXIS 3244, at *2–3, 9–12 (Tex. App.—Austin Mar. 31, 2016, no pet.) (mem. op.) (concluding that appellants did not have standing to challenge merits of permit application to TCEQ when they did not demonstrate that they were "affected persons").

Consistent with this analysis, the Railroad Commission's December 2016 order concluded that NGL did not have "party status to protest" the application and remanded the permit application for administrative review and consideration. *See* 16 Tex. Admin. Code § 1.201 (Time

24

Periods for Processing Applications and Issuing Permits Administratively) (establishing when application is complete); *see also Citizens Against Landfill Location v. Texas Comm'n on Envtl. Quality*, 169 S.W.3d 258, 272 (Tex. App.—Austin 2005, pet. denied) (discussing significance of determination that application is administratively complete). The trial court affirmed the Railroad Commission's order. In this context, we conclude that we do not have jurisdiction to address NGL's complaints that are directed to the merits of the Railroad Commission's subsequent administrative approval and issuance of Blue Water's permit. *See Bacon*, 411 S.W.3d at 174 (addressing constitutional requirement of standing that "particular plaintiff has a sufficient personal stake in the controversy"); *Continental Cas. Ins.*, 19 S.W.3d at 397.

## Conclusion

For these reasons, we affirm the portion of the trial court's order affirming the Railroad Commission's challenged order and dismiss NGL's claims for declaratory relief.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed in Part; Dismissed in Part

Filed: November 27, 2019